UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNCENSORED AMERICA<br>PO Box 5696<br>Santa Monica, CA 90405<br><br>SEAN SEMANKO<br>PO Box 5696<br>Santa Monica, CA 90405<br><br>*Plaintiff's,*<br><br>v.<br><br>THE PENNSYLVANIA STATE UNIVERSITY;<br>NEELI BENDAPUDI, in her official capacity as President of The Pennsylvania State University;<br>JEFF ZAPLETAL, in his official capacity as Administrator for Student Affairs at The Pennsylvania State University;<br>UNIVERSITY PARK ALLOCATION COMMITTEE, in its official capacity;<br>and<br>DOES 1-10, in their official capacities as University officials<br>201 Old Main,<br>University Park, PA 16802 (all Defendants)<br><br>*Defendants* | Case No.: _____<br><br>FILED<br>HARRISBURG, PA<br><br>OCT 29 2025<br><br>PER _____<br>DEPUTY CLERK |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

UNCENSORED AMERICA and SEAN SEMANKO, by and through counsel, hereby brings the following Complaint and states as follows:

**INTRODUCTION AND SUMMARY**

1. This action arises from Defendants' systematic suppression of protected speech on the campus of The Pennsylvania State University ("Penn State"), a public university bound by the First and Fourteenth Amendments to the United States Constitution. Plaintiff Uncensored America

1

("UA") seeks to vindicate their rights to free speech, expressive association, and equal protection by challenging Penn State's unwritten and ad hoc policies and practices that impose prior restraints on speech based on the anticipated viewpoint or controversy of invited speakers. These restrictions—manifested through denials of security and funding, forced relocation of events indoors, and outright cancellations in response to heckler's veto—effectively censor conservative and controversial viewpoints while permitting unrestricted expression of opposing perspectives.

2.     Penn State's actions create a regime of unbridled administrative discretion that invites viewpoint discrimination and chills obvious political speech in a quintessential public forum. Penn State has denied outdoor expressive activities, withheld funding, and invoked spurious "police availability" and "security" concerns to target events featuring speakers like Gavin McInnes, Alex Stein, Tim Pool, and Myron Gaines—known for their conservative, peaceful, engaging, and provocative commentary—while approving analogous events by left-leaning groups without restriction.

3.     In October 2022, Penn State sponsored a smear event against Plaintiff's invited speakers, tolerated violent protests that culminated in the unlawful cancellation of a hosted lecture, and failed to prosecute an assailant, effectively surrendering to a violent heckler's veto. In 2025, Penn State denied funding and security for a planned debate table citing phantom "police unavailability," forced the event indoors under vague "secure space" criteria, and retroactively denied funding after a spontaneous iteration succeeded without incident—contrasting sharply with approvals for large-scale events like ESPN's College GameDay and Students for Justice in Palestine's ("SJP") expansive display. These actions violate the First Amendment by imposing content- and viewpoint-based prior restraints on speech in designated areas of expressive activity,

2

such as Old Main Patio and HUB Lawn, and deny equal protection under the Fourteenth Amendment by discriminatorily burdening disfavored viewpoints.

4. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for damages, declaratory judgment that Defendants' policies and practices are unconstitutional, and injunctive relief enjoining their enforcement. Absent intervention, Penn State's discrimination will continue to silence dissenting voices (conservative) and erode the free exchange of ideas essential to higher education.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights actions). This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Centre County, Pennsylvania, within this District, and Defendants reside and/or transact business here.

## PARTIES

1. Plaintiff Sean Semanko is the owner and president of Uncensored America, which is a national nonprofit organization dedicated to promoting uncensored dialogue and free expression on college campuses through student-hosted events featuring diverse, often controversial speakers. UA operates chapters at public universities, including Penn State, and relies on university facilities, funding, and security for expressive activities.

2. Plaintiff Uncensored America is a national nonprofit organization dedicated to promoting uncensored dialogue and free expression on college campuses through student-hosted events featuring diverse, often controversial speakers. UA operates chapters at public universities,

including Penn State, and relies on university facilities, funding, and security for expressive activities.

3. Defendant The Pennsylvania State University is a public institution of higher education funded and operated by the Commonwealth of Pennsylvania, subject to the United States Constitution. It maintains policies governing student expression on its University Park campus in State College, Pennsylvania.

4. Defendant Neeli Bendapudi is sued in her official capacity as President of Penn State. She is responsible for overseeing university policies, including those related to free speech, event approvals, and campus security.

5. Defendant Jeff Zapletal is sued in his official capacity as an Administrator for Student Affairs at Penn State. He directly communicated with Plaintiff regarding event approvals, security, and relocations, exercising discretion over expressive activities.

6. Defendant University Park Allocation Committee ("UPAC") is sued in its official capacity as the entity responsible for allocating funding to student organizations for events, including security costs. UPAC's decisions directly impact Plaintiff's ability to host speech.

7. Defendants DOES 1-10 are unknown Penn State officials responsible for campus security, event permitting, and protest response, sued in their official capacities. Plaintiff will amend to identify them upon discovery.

## FACTUAL ALLEGATIONS

8. Penn State, as a public university, constitutes a designated public forum for student expressive activities. Designated areas, such as Old Main Patio, are explicitly recognized as "areas of expressive activity" where students may assemble, speak, and debate without prior permission, subject only to reasonable, content-neutral time, place, and manner restrictions. *See* Penn State

Policy AD-51 (Use of Outdoor Areas for Expressive Activity). Despite this, Defendants have imposed an unwritten discriminatory practice of prior restraints—relying on subjective assessments of "police availability," "security risks," and "secure spaces"—to target events based on the viewpoints of invited speakers.

*The October 2022 Event: Sponsored Smears, Violent Protests, and Unlawful Cancellation*

9.  On October 24, 2022, UA was scheduled to host a lecture at Penn State featuring conservative commentators Alex Stein and Gavin McInnes, known for their humor, engaging debates, criticism of progressive ideologies and defense of free speech. The event was planned to be on University property and complied with all registration requirements.

10. In the lead-up, Penn State sponsored and hosted a counter-lecture on October 19, 2022, featuring Joan Donovan, who labeled McInnes a "hateful, fascist, Nazi," inciting outrage and calls to cancel UA's event. This state-sponsored smear amplified anticipated controversy.

11. On event day, Antifa protesters gathered outside the venue, creating a hostile environment. Stein engaged protesters verbally, resulting in one spitting on him—a battery unaddressed by police. An attendee was physically assaulted when protesters attempted to seize his Trump hat. Another was verbally harassed while entering. None of these safety risks were addresses by police nor were there any security present to avoid or stop the battery.

12. With the Joan Donovan event prior to UA's, causing unnecessary controversy, Penn State was well on notice security would be needed to protect the newly labeled "controversial" speakers. Yet one of the main speakers of UA's event was spit on without any security or police presence to stop it.

13. Protesters then deployed pepper spray into the crowd, injuring attendees. University police witnessed the assault but took no immediate action to apprehend the perpetrator. Instead,

Defendants declared the area an "unlawful disturbance," ordered dispersal under threat of arrest, and canceled the event mid-progress, effectively silencing Plaintiff's speech in response to violence by opponents. Plaintiff's did not cause the pepper spray to be initiated, nor did they act unlawfully once attacked. Yet, the violate protesters attempting to silence free speech due to view point, were allowed to shut down the event without repercussion. Plaintiff was silenced without any fault specifically due to their viewpoint.

14. State College Police later admitted the FBI identified the pepper spray assailant as Nicholas G. Mucci, a serial arrestee, yet no charges were filed, emboldening future disruptions and signaling Defendants' tolerance for violent heckler's veto.

15. Penn State, due to their failures to prosecute a known offender, Mr. Mucci was given the message if you harm someone for their conservative views, you will go without punishment.

16. The Foundation for Individual Rights and Expression ("FIRE") demanded accountability via letter, highlighting First Amendment violations. Penn State responded evasively, and FIRE rebutted, underscoring the chilling effect on future events.

*The October 2025 Debate Table: Denied Funding, Forced Indoors, and Viewpoint-Based Disparities*

17. In August 2025, Plaintiff sought UPAC funding for an outdoor debate table on Old Main Patio—a designated expressive area—featuring Tim Pool, Alex Stein, and Myron Gaines, conservative voices debating relevant cultural and entertainment issues. The event was scheduled for October 10, 2025, early afternoon, with minimal expected disruption.

18. On August 21, 2025, UPAC denied funding citing "not enough police service availability," vaguely attributing it to the Homecoming parade that evening—despite no temporal

overlap. UA sought clarification, receiving no response. Follow-up inquiries to campus security yielded only assurances of forwarding concerns, with no substantive reply.

19. On September 9, 2025, Defendant Zapletal demanded relocation to a different date due to "police availability." Plaintiff requested documentation from police; none was provided.

20. On September 24, 2025, Zapletal escalated, requiring the event move indoors, citing unspecified security concerns. A few days later, September 27, 2025, Penn State hosted ESPN's College GameDay on Old Main Lawn—an all-day outdoor event drawing hundreds—without similar hurdles.

21. In a September 26, 2025 meeting, Zapletal suggested the Business Building; UA requested the centrally located HUB for greater visibility. No resolution followed.

22. On October 7, 2025, Student for Justice in Palestine hosted a university approved "Palestine display" on HUB Lawn, featuring 18,000 flags, tents, displays, and a car—far larger and more logistically complex than Plaintiff's table—without indoor mandates or security denials.

23. This Palestine event is considered as controversial as UA's. Yet again, Penn State allowed this event to be outside without prior security concerns impeding's its ability to move forward.

24. The Palestine event and UA's both are on opposite sides of the political spectrum, both are controversial, and both are very hotly supported and opposed. The Palestine event is considered a liberal cause while UA's is conservative. Only UA's events were singled out for delay and cancelation, due mainly to protesters not UA themselves, while the Palestine event went on without issue.

25. On October 9, 2025, Zapletal defined "secure" spaces as those allowing "ticketed" entry, magnetometers, and bag checks, deeming HUB atrium unsuitable.

26. On October 14, 2025, Plaintiff hosted a spontaneous debate table with Myron Gaines on Old Main Patio. Penn State deployed six officers to monitor—demonstrating ample "availability"—and no violence occurred, proving the these UA events would not be violent if opposing protesters were *not* allowed to engage in violence.

27. On October 21, 2025—one day before this filing—UPAC retroactively denied the original funding request, claiming the event "already occurred" beyond planned dates, further punishing Plaintiff's exercise of speech.

28. These actions imposed severe burdens: financial (denied funding), logistical (indoor relocation reducing visibility), and expressive (chilling future events), while favoring events aligned with progressive viewpoints.

## CAUSES OF ACTION

### COUNT I

**Violation of the First Amendment Right to Free Speech (42 U.S.C. § 1983)**

29. Plaintiff incorporates by reference the foregoing paragraphs.

30. The First Amendment, applicable via the Fourteenth, prohibits prior restraints on speech in public forums. Penn State's campus expressive areas are designated public fora where content-based restrictions are presumptively invalid absent compelling justification and narrow tailoring.

31. Defendants' unwritten policies—relying on subjective "police availability," "security," and "secure space" assessments—grant unbridled discretion to suppress speech based on anticipated controversy, constituting facial and as-applied prior restraints. These criteria invite censorship: the 2022 cancellation responded to protester violence rather than preventing it, while 2025 denials cited phantom risks disproven by the spontaneous event.

8

32. Defendants' actions are not narrowly tailored to safety; ample alternatives (e.g., increased monitoring, as in the October 14 event) exist, and undifferentiated fears of disruption cannot justify suppression.

33. Defendants' actions show they allow phantom risks to halt conservative events but not liberal vents like the Palestine event.

34. Defendants' conduct has chilled Plaintiff's speech, causing irreparable harm.

## COUNT II

**Violation of the First Amendment Right to Expressive Association (42 U.S.C. § 1983)**

35. Plaintiff incorporates by reference the foregoing Paragraphs.

36. UA's events foster association among like-minded students for political expression, protected by the First Amendment. By denying funding, security, and venues based on speaker viewpoints, Defendants have burdened this right, forcing dilution (e.g., indoor relocation) or cancellation.

## COUNT III

**Violation of the Fourteenth Amendment Right to Equal Protection (42 U.S.C. § 1983)**

37. Plaintiff incorporates by reference the foregoing Paragraphs.

38. Defendants have applied restrictions discriminatorily to conservative viewpoints while permitting comparable left-leaning events (e.g., Donovan lecture, SJP display, College GameDay). This content- and viewpoint-based discrimination fails rational basis review and violates equal protection.

## COUNT IV

**Municipal Liability (42 U.S.C. § 1983)**

39. Plaintiff incorporates by reference the foregoing Paragraphs.

40. Penn State's policies reflect a custom of viewpoint discrimination, ratified by officials like Zapletal and Bendapudi, rendering the institution liable. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare Defendants' policies and practices unconstitutional under the First and Fourteenth Amendments;

B. Preliminarily and permanently enjoin Defendants from enforcing viewpoint-based restrictions on expressive events;

C. Award compensatory and nominal damages, including costs incurred from denied funding and event disruptions;

D. Award Plaintiff's attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

E. Retain jurisdiction to ensure compliance; and

F. Grant such other relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues triable.

Respectfully submitted,

*[signature]*   10/24/25

Sean Semanko   Date
PO Box 5696
Santa Monica, CA 90405
Email: info@uncensoredamerica.us
Cell: 484.757.2935
*Pro Se Plaintiff*

FROM:
Sean Semanko
456 Gateswood Dr.
West Chester, PA 19380

RECEIVED
HARRISBURG, PA
OCT 29 2025
PER _____ TO: _____
DEPUTY CLERK

Clerk's Office
Sylvia H. Rambo
United States Courthouse
1501 N. 6th St Ste. 101
Harrisburg, PA. 17108
17102